Filed 4/22/13  Milette v. Vaughns CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**DONNA MILETTE,**

    **Plaintiff and Appellant,**               **A134468**

    **v.**                              **(Contra Costa County**
                                          **Super. Ct. No. MSC0901034**

**THOMAS VAUGHNS et al.,**

    **Defendants and Respondents.**
_____/

    Donna Milette sued Thomas and Charlotte Vaughns (collectively, the Vaughns) for, among other things, breach of written and oral contract arising out of the Vaughns' purchase of an interest in Milette's property.  The parties settled the case during trial.  The trial court denied Milette's motion for $116,275 in attorney fees, concluding there was "no contractual or statutory ground for recovery shown by the evidence nor did the settlement provide for attorney fees."

    Milette appeals.  She contends the court erred by denying her motion for attorney fees because the "stipulated judgment was entered upon a contract containing a provision providing for fees to the prevailing party[.]"

    We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In November 2006, the parties entered into a standard offer, agreement, and escrow instructions for purchase of real estate (Purchase Agreement) wherein the Vaughns agreed to purchase a 50 percent ownership interest in commercial real property (the property) Milette owned in San Ramon for $800,000.[1]

Paragraph 16 of the Purchase Agreement, entitled "Attorneys' Fees," provides: "If any Party or Broker brings an action or proceeding . . . involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party . . . in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees.  Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment.  The term 'Prevailing Party' shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought . . . whether by compromise, settlement, judgment or abandonment by the other Party or Broker of its claim or defense. . . ."

The parties apparently continued to negotiate the terms of transaction and in early 2007, they amended the Purchase Agreement with a written addendum entitled second addendum to AIR standard offer, agreement, and escrow instructions for purchase of real estate (Second Addendum).  The Second Addendum provided the "parties acknowledge they are still in contract under the original agreement dated November 8, 2006."  The Second Addendum reduced the purchase price to $720,000, obligated the Vaughns to "carryback a note of $116,000 at 8.875% interest monthly ARM [adjustable rate mortgage] for three (3) to six (6) months" and to pay $100,000 at the close of escrow.

In March 2007, escrow closed and Milette conveyed to the Vaughns a 50 percent ownership interest in the property.  The Vaughns delivered to Milette a promissory note

---

[1]     It is difficult to determine what transpired between the parties because Milette does not summarize any facts leading to the filing of the lawsuit and has not included the reporter's transcript of the first day of trial.  In their brief, the Vaughns provide some procedural history and describe the dispute over the promissory note, but seldom cite to the record.

for $116,000 secured by a deed of trust and began making payments on the $116,000 loan.  Milette rejected the promissory note and told the Vaughns she would prepare the promissory note.  Milette apparently never prepared the promissory note.  A dispute arose about the parties' responsibilities regarding the property's operating expenses and the property went into foreclosure.

*Litigation and Settlement*

Milette sued the Vaughns.  The operative first amended complaint alleged claims for, among other things, breach of written and oral contract.  Milette alleged the Vaughns agreed "to execute a promissory note in the sum of $116,000, which was to bear interest at the rate of 8.875% per annum and was to be paid to [her] within three to six months following the closing. . . . However . . . in a separate ancillary oral agreement, [the Vaughns] agreed to pay . . . the additional sum of $130,000, with monthly interest-only payments at the rate of 7% per annum to complete the transaction."  Milette alleged the Vaughns breached the Purchase Agreement by refusing to pay the $116,000.  She also alleged the Vaughns breached the oral agreement by denying "an obligation to pay any portion of the $130,000 oral agreement and by "refusing to make the monthly payments owed . . . pursuant to the oral agreement."  Milette sought compensatory and punitive damages, and attorney fees. The operative complaint attached an unsigned copy of the Purchase Agreement and a signed copy of the Second Addendum.

On the third day of a bench trial, the parties settled the case.[2]  Counsel for Milette informed the court that the parties agreed to stipulate "for entry of judgment for a certain amount. . . . The parties are going to agree that . . . this was a judgment after a court trial and that fees and costs would be decided in the ordinary way.  And they'll be decided after trial, [a] memorandum of costs with [a] motion to tax, potentially [a] motion for fees, which the Court would grant, deny, or whatever it does with it."  When asked

---

[2]     The Vaughns dismissed their cross-complaint against Milette shortly before trial. The reporter's transcript of the first day of trial is not part of the appellate record.  It appears from the register of actions, however, that the court admitted a signed copy of the Purchase Agreement and Second Addendum on the first day of trial.

whether the court had "any problem with that framework," the court stated it could determine what costs to award the prevailing party, "[b]ut attorney's fees, I wouldn't be able to address. [¶] Is there an attorney's fees clause in anything?"

In response, counsel for Milette said, "there's a question of whether it would apply obviously and the amount. [¶] I understand [ ] ordinarily the sound discretion of the trial court in awarding fees is based on the trial." The court responded, "I cannot award attorney's fees without actually trying the case. . . . [W]e'll have to figure out if there's an attorney's fees clause that is applicable."

Later, counsel for the Vaughns said, "We are ready to put the terms of the settlement on the record. . . . [¶] But the attorney's fees . . . was just a sticking point, and we were hoping or they were hoping that that would be decided later on just as a motion." He explained, "[m]y understanding . . . is that we have agreed on all of the terms. The only thing that is remaining is the issue of the attorney's fees and costs. [¶] And from what I understand your Honor is saying is that it's — you're not barring [Milette] from presenting a motion to that effect because . . . we can stipulate to having [Milette] put on a motion for attorney's fees and costs and for a judge to decide on it." In response, the court directed the parties to read the stipulation into the record.

Counsel for Milette read the following stipulation into the record: "it is hereby stipulated between the parties that judgment shall be entered . . . in favor of plaintiff, Donna Milette, and against defendants, Thomas Vaughns and Charlotte Vaughns, in the amount of $152,000, which is stipulated to be the principal on the [$]116,000 dollar loan referred to in the first amended complaint plus applicable interest. [¶] Costs and attorney's fees (if applicable) are to be awarded using the standards and procedures applicable as if the Court had awarded this amount by judgment, the amount being the $152,000 after trial. [¶] Costs will be determined by a memorandum of costs and possible motion to tax and attorney's fees by motion."[3]

---

[3] The parties agreed to a "separate stay of execution not a part of the judgment" but that stay is not relevant to the issues on appeal.

After some discussion, the court concluded, "[i]t sounds like . . . when you do your stipulation on this stay you might have a few things to work out, but otherwise is this the full agreement?" Counsel for both parties said yes. Milette's counsel explained that the judgment would have a "space for costs and a space for attorney's fees if awarded by the Court . . . the fact that there is a blank for costs and a blank for attorney's fees means if appropriate. Doesn't mean we're prejudging that they are awardable in this case."

The judgment by stipulation signed by the court provided: "[b]ased upon the stipulation of the parties entered into in open court and in the Stipulation for Entry of Judgment filed with this court . . . judgment is entered in favor of . . . Milette against . . . [the] Vaughns in the amount of $152,000. [¶] Plaintiff is further awarded costs in the amount of ____ and attorneys' fees in the amount of ____." The court later awarded Milette $3,840.90 in costs and inserted this amount in the blank space in the judgment.

*Milette's Motion for Attorney Fees*

Milette moved for $116,275 in attorney fees. She argued she was entitled to attorneys fees pursuant to paragraph 16 of the Purchase Agreement, which was attached to the operative complaint. Milette claimed "[t]his lawsuit comes within the purview of the attorneys fees clause both because it involves the property, and also because it is to declare rights under the contract." In addition, Milette contended she was entitled to fees as the prevailing party under Civil Code section 1717.[4]

The Vaughns opposed the motion. They argued, among other things: (1) there was no prevailing party; (2) the court did not find the existence of an enforceable contract; (3) "[t]he unsigned contract at issue . . . never came into evidence during trial[;]" and (4) the litigation did not fall within the scope of the attorney fee provision in the unsigned contract. In reply, Milette argued, "[g]iven that the only $116,000 loan referred to in the First Amended Complaint is the one set forth in the [P]urchase [A]greement as amended by the Second Addendum, for purposes of the fee motion the court must consider that liability was found under that agreement, pursuant to the

_____

[4]  Unless otherwise noted, all further statutory references are to the Civil Code.

5

stipulation for entry of judgment entered into by the parties." Milette also contended the litigation came within the attorney fee provision of the Purchase Agreement, as amended by the Second Addendum.

The court's tentative ruling was to deny the motion for attorney fees. When asked by Milette's counsel whether the court was concluding the Purchase Agreement did not provide for the recovery of attorney fees, the court stated, "I feel . . . that your settlement and the way the settlement was done doesn't incorporate [the Purchase Agreement]. . . . "[i]t was not a clear settlement[.]" In a written order following the hearing, the court concluded there was "no contractual or statutory ground for recovery shown by the evidence nor did the settlement provide for attorney fees."

DISCUSSION

"Orders denying or granting an award of attorney fees are . . . generally reviewed using an abuse of discretion standard of review. [Citation.] But a 'determination of whether the criteria for an award of attorney fees and costs have been met is a question of law.' [Citation.]" (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

I.

*Attorney Fees are Not Recoverable Pursuant*<br>*to the Settlement Agreement*

Milette concedes "the settlement agreement did not provide that [attorney] fees would be awarded" to her. She contends, however, that she is entitled to attorney fees because the settlement is based on the $116,000 loan and because the Vaughns' obligation to pay the $116,000 arose out of the Purchase Agreement and Second Addendum. According to Milette, "[t]he stipulation read into the record explicitly stated that the $152,000 amount of the judgment was based upon the $116,000 loan referred to in the First Amended Complaint plus applicable interest. *There is only one $116,000 loan referred to in the First Amended Complaint*. The $116,000 loan referred to in that complaint is created by [the Purchase Agreement] and the signed Second Addendum to that agreement, both attached to the First Amended Complaint. . . ."

6

We are not persuaded. As Milette concedes, the settlement agreement does not entitle her to recover attorney fees. Before counsel for Milette read the stipulation into the record, the parties had not reached an agreement on attorney fees. Counsel for Milette admitted there was a "question" about her entitlement to fees and later stated no one was "prejudging that [attorney fees] are awardable in this case." As counsel for the Vaughns told the court, "[m]y understanding . . . is that we have agreed on all of the terms. The only thing that is remaining is the issue of the attorney's fees and costs."

Nor does the stipulation incorporate the Purchase Agreement's fee-shifting provision. "Incorporation by reference requires that (1) the reference to another document was clear and unequivocal; (2) the reference was called to the attention of the other party, who consented to that term; and (3) the terms of the incorporated documents were known or easily available to the contracting parties. [Citation.]" (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 765.) The stipulation does not make a "clear and unequivocal" reference to the Purchase Agreement or to the attorney fees clause in the Purchase Agreement. (*Id.* at p. 765.) It does not refer to the Purchase Agreement at all. The stipulation merely states judgment will be entered for Milette in "in the amount of $152,000, which is stipulated to be the principal on the [$]116,000 dollar loan referred to in the first amended complaint plus applicable interest." That the stipulation refers to the operative complaint, which in turn refers to the Purchase Agreement, does not mean the stipulation incorporates the Purchase Agreement by reference.

## II.

*Milette Has Not Demonstrated the Court Erred by Concluding
She Was Not Entitled to Attorney Fees Pursuant
to Contract or Statute*

Next, Milette claims she was entitled to attorney fees under section 1717 "[i]n the case of an ordinary judgment on a contract with a fee provision" and, as a result, she was "equally entitled to fees under the judgment by stipulation."

7

Section 1717, subdivision (a) provides, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Subdivision (b)(1) provides, "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." Section 1717, subdivision (b)(2) states there is no prevailing party "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case. . . ."

The Vaughns argue Milette was not entitled to attorney fees because the stipulated judgment was based on a breach of the $116,000 loan and not on a breach of the Purchase Agreement. They also contend Milette was not entitled to attorney fees because she did not plead a breach of the Purchase Agreement in the first amended complaint and, in any event, the Purchase Agreement does not contain their promise to pay the $116,000 loan. The Vaughns also argue Milette was not entitled to attorney fees under the Purchase Agreement because they fully discharged their obligations under the Purchase Agreement and Second Addendum. Finally, the Vaughns claim Milette was not entitled to attorney fees under the Second Addendum because that document does not contain an attorney fees provision and does not incorporate by reference any provision for attorney fees from another document.

As stated above, the court denied Milette's motion for attorney fees in part because "no contractual or statutory ground for recovery [was] shown by the evidence. . . ." In making this assessment, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and

8

similar sources. . . . [Citation.]  Where neither party achieves a complete victory, the trial court has discretion to determine . . . 'whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.'  [Citation.]"  (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 439-440 (*Zintel*).)  On the record before us, we cannot conclude the court's ruling was erroneous.  The stipulated judgment refers to the "[$]116,000 dollar loan referred to in the first amended complaint" without making reference to any contract entitling the prevailing party to attorney fees.  Milette has not summarized the evidence offered at trial, nor has she provided a complete record of the trial testimony.  As a result, we cannot determine whether Milette's lawsuit and its litigation through two days of trial was an "action on the contract," whether the contract she litigated provided for the recovery of attorney fees, and "'whether there is a "party prevailing on the contract."'"  (*Id.* at p. 439, quoting *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)  "It is the burden of appellant to provide an accurate record on appeal to demonstrate error.  Failure to do so precludes an adequate review and results in affirmance of the trial court's determination."  (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1; *Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9 ["if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed"].)

Milette's theory is that she would have been entitled to attorney fees "[h]ad the case proceeded to judgment after trial" because the Purchase Agreement provides for the recovery of attorney fees to the prevailing party.  Milette does not cite any cases supporting this argument.  Instead, she likens this case to *Ritzenthaler v. Fireside Thrift Co.* (2001) 93 Cal.App.4th 986 (*Ritzenthaler*).  In *Ritzenthaler*, the Ritzenthalers sued Fireside Thrift Company (Fireside), a finance company, after it repossessed their used car.  (*Id.* at p. 988.)  After a mediation session, "Fireside sent the Ritzenthalers a written offer to compromise under section [Code of Civil Procedure section] 998, offering to 'allow a judgment to be entered against it in the amount of $2,001 and to file a satisfaction of judgment with respect to the $2,580 judgment which Fireside has obtained against Plaintiffs in final settlement of all damages and injunctive claims against Fireside

arising out of or related to the allegations alleged in this action.' The Ritzenthalers responded to Fireside's section 998 offer by offering to settle on the terms Fireside had proposed at mediation, but Fireside indicated the 'only outstanding settlement offer is the 998 offer of $2,001.' The Ritzenthalers accepted the section 998 offer." (*Ibid.*, fn. omitted.)

The Ritzenthalers then moved for attorney fees pursuant to section 1717, "seeking $12,500 in attorney fees based on attorney fee clauses in the security agreement and promissory note." (*Ritzenthaler, supra*, 93 Cal.App.4th at p. 989.) The trial court rejected Fireside's claim that the Ritzenthalers waived their claim to attorney fees and costs. (*Ibid.*) The appellate court affirmed, concluding the Ritzenthalers did not waive their right to recover attorney fees when they accepted the Code of Civil Procedure section 998 offer. The *Ritzenthaler* court explained, "Fireside's offer specifically encompassed 'all damages and injunctive claims' asserted by the Ritzenthalers but omitted any mention of any claim for attorney fees the Ritzenthalers might have. The only reasonable conclusion is that attorney fees were not within the scope of the proposed compromise agreement, and the Ritzenthalers did not waive their right to recover their attorney fees from Fireside under Civil Code section 1717 by accepting Fireside's section 998 offer. If Fireside intended its offer to encompass attorney fees, it could easily have said so—for example, by providing in its offer that each side would bear its own attorney fees. . . . Fireside did not do so, however, and we cannot rewrite the agreement for the parties; we can only interpret the agreement the parties wrote themselves." (*Id.* at p. 991, citation omitted.)

*Ritzenthaler* stands for the proposition that a party who accepts an offer of compromise under Code of Civil Procedure section 998 does not waive its entitlement to a fee award unless the offer of compromise contains such a waiver. It does not assist Milette, because the issue in this case is not whether Milette waived her right to attorney fees by accepting a Code of Civil Procedure section 998 offer.

On the record before us, we conclude the court, having considered the appropriate criteria, did not abuse its discretion in denying Milette's motion for attorney fees. Having

10

reached this conclusion, we need not address the Vaughns' additional arguments regarding the recoverability of attorney fees.

## DISPOSITION

The order denying Milette's motion for attorney fees is affirmed.  The Vaughns are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278.)

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.

11